2024 IL App (1st) 240246-U

Fourth Division
Filed May 15, 2024

No. 1-24-0246B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County |
| | ) | |
| v. | ) | No. 24 DV 70649 01 |
| | ) | |
| BRIANA WILLIAMS, | ) | The Honorable Michael Weaver, |
| Defendant-Appellant. | ) ) | Judge, presiding. |
| | ) | |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1     *Held:*  The trial court did not err by finding that the State carried its burden of showing, by clear and convincing evidence, that the defendant committed a detainable offense, that the defendant posed a real and present threat to the alleged victims, and that no conditions of pretrial release would mitigate that threat.

¶ 2     Defendant Briana Williams appeals from an order denying her release pending trial for aggravated arson and criminal damage to property. We affirm.

¶ 3                              BACKGROUND

¶ 4     Williams was arrested on January 17, 2024. Two days later, she was charged with aggravated arson and criminal damage to property.[1] At her initial appearance, the State filed a

---

[1]  While this appeal was pending, the State filed a superseding indictment charging Williams with the same offenses under case number 24 CR 60075 01.

petition to deny pretrial release on the basis that she posed a real and present threat to the safety of one or more persons or the community at large. The hearing was held immediately.

¶ 5    The State's proffer asserted that, about three weeks earlier, on December 30, 2023, Williams's ex-boyfriend Allan Howard woke up to find Williams, who he had been trying to cut ties with for months, in his house.[2] Also there was Allan's brother Tony, who has an intellectual disability and lives with Allan, and an unnamed third party. That third party got into a fight of some kind with Williams, and Allan told Williams to leave. She refused, so Allen fought with her until he was able to push her out the door. The situation escalated from there. Williams retrieved a baseball bat from somewhere, went to Allan's car, and started busting windows. Naturally, Allan ran out to stop her, but that gave Williams an opening. She ran back inside and locked Allan out. When he heard the sound of things being broken inside his home, he began circling the building, looking for a way in. He had not yet found one when smoke started coming out of the home. Fully aware that Tony was still inside, Allan managed to get back in and found his living room couch aflame. Some of his other things were on fire, too. In the following days, Williams repeatedly called Allan. She also sent him a text message saying that she would blow up his car next. After being arrested and given *Miranda* warnings, Williams admitted to police that she was mad at Allan and that she had damaged his car and then gone back into the house. She did not admit to setting the fire. The State also informed the court that Williams was on pretrial release in a pending, and apparently unrelated, prosecution for battery and had two bond forfeitures.

¶ 6    According to the defense's proffer, Williams, who was 29 years old, was not an ex-girlfriend; she was the 60-year-old Allan's caretaker. She was at Allan's home when a woman named Olympia, who had come there to threaten Williams in the past (and not always alone), turned up and started hitting her with a two-by-four. Williams defended herself and forced Olympia out of the home. The fire, she told police, had been started by Tony, who was physically capable

---

[2]    The State initially proffered that the residence was a multi-story, multi-family home, but it withdrew that representation when defense counsel said that the Redfin listing showed that it was a single-family bungalow.

despite having an intellectual disability and, according to Allan, had threatened more than once in the past to blow up the world. Defense counsel also told the court that Williams was a lifelong Chicago resident who lived more than seven miles away from Allan's house and worked at a McDonald's. Counsel argued that GPS monitoring would be a reasonable release condition to ensure that she did not have further contact with "either complaining witness."[3]

¶ 7    In response, the State argued that GPS monitoring would not be an adequate condition of release in light of her recent threat to blow up Allan's car. Williams interjected, "I hid that phone, so that's not true. Anybody could have texted, found it saying that, ma'am." The court admonished Williams that it was "not the time to talk," and the State continued, arguing that GPS monitoring was not fool-proof and would not keep Allan safe from Williams, who could easily make good on the threat.

¶ 8    The court started its oral ruling by finding, without elaboration, that the State had proven by clear and convincing evidence that the proof was evident and the presumption was great that Williams had committed the detainable offense of aggravated arson and the offense of criminal damage to property. It next found that, based on her admitted window-smashing and the fact that she started a fire with a disabled person still in the home, Williams posed a real and present threat to the safety of a person or to the community. Finally, it found that there were no conditions or combination of conditions of release that would mitigate that threat. It noted that Williams had a pending battery case and an order of protection against her.[4] When it started explaining that GPS monitoring would not be adequate in light of the post-incident text message threatening to blow up Allan's car, Williams interrupted, setting off this exchange:

---

[3]  It is not clear whether counsel was referring to Allan and Tony or Allan and the woman she had fought at Allan's home.

[4]  Although not mentioned during the State's oral proffer, the arrest report for this incident, which was given to defense counsel before the detention hearing and is in the record on appeal, stated that Williams has an active order of protection against her under a specific case number.

"[THE COURT:] I also take in the fact that GPS would not be sufficient based on the text messages afterwards that she would blow up the complaining witness's car next which to this Court determined—

THE DEFENDANT: I didn't say I was going to blow up his car. And if he's been avoiding me so much, why would he let me in his house on my birthday? Use your common sense, Judge Weaver.

THE COURT: And I also find further evidence of why GPS might not work is I see Ms. Williams is unable to control herself even in court by speaking after she's been told not to speak.

So I find that there might be a little bit limited impulse control here which concerns the Court that when she's in an even more precarious situation, confronting an ex-boyfriend, that GPS would not matter to her.

THE DEFENDANT: He's not my ex-boyfriend (indecipherable).

THE COURT: So I find no less restrictive conditions would avoid—

THE DEFENDANT: (Indecipherable).

THE COURT: No condition or combination of conditions of pretrial release can mitigate the real and present threat posed by the Defendant—

THE DEFENDANT: (Indecipherable).

THE COURT: No less restrictive conditions would avoid—Ms. Williams. Ms. Williams, you need to stop talking right now.

THE DEFENDANT: (Indecipherable).

THE COURT: All right. The Defendant is remanded to the custody of the Cook County Sheriff for confinement in the Cook County Department of Corrections pending trial."

¶ 9     After announcing its ruling, the court advised Williams that she had a right to appeal its release ruling, and then it asked whether she understood those rights. When it realized that

Williams had been muted—the hearing was being held remotely (see Ill. S. Ct. R. 45(d)(1)(i) (eff. Feb. 2, 2023))—the court asked a deputy to unmute her, which set off another exchange:

"[THE COURT:] Deputy, could you unmute Ms. Williams, please?

THE DEFENDANT: What's your question? Now you want me to talk. What's your question, Weaver?

THE COURT: Ma'am, do you understand your appeal rights, that I've read them to you?

THE DEFENDANT: No. No. I don't understand nothing but when he blew my truck up—or when he tried to (indecipherable) on fire, he wanted to put me in jail. That's as stupid as hell. That's what I don't understand (indecipherable).

THE COURT: Ms. Williams. I'm about to hold you in contempt of court.

THE DEFENDANT: Okay.

THE COURT: Do you understand your appeal rights?

THE DEFENDANT: No, I don't. I just said no.

THE COURT: Okay. So, ma'am, you have a right to appeal your conditions of pretrial release which include the detention order that I've just issued. However, in order to effect that appeal, to make that appeal possible, you need to file a notice of appeal within 14 days of today's date. Do you understand that?

THE DEFENDANT: No, I don't.

THE COURT: Okay. What don't you understand about that?

THE DEFENDANT: None of it.

THE COURT: Okay. So I'm detaining you. You understand that, right?

THE DEFENDANT: No, I don't know what that means. I don't have my judge degree yet. What does that mean, Weaver?

THE COURT: So I'm detaining you. So you're remanded to the custody of the Cook County Sheriff until trial in this matter. Do you understand that?

THE DEFENDANT: No, I don't understand. Why can't I just get an electric monitor? I didn't text that I was going to blow his vehicle up. Anybody could text him that. It's called manipulation. Use your common sense. I don't (indecipherable).

THE COURT: Okay. Ms. Williams, I am using your common sense that you are a threat, so I'm asking if you understand your appeal rights. I'm detaining you. Do you understand that?

THE DEFENDANT: He blew my car up. Then I get hit with a [two-by-four]. What about that?

THE COURT: Okay. So, Ms. Williams, since you're not cooperating with the Court, [defense counsel], I'd ask you to confirm that Ms. Williams understands her appeal rights. The Court has attempted to explain to her what it means that she's being detained, what her notice of appeal rights are, and Ms. Williams is refusing to respond to the Court in an appropriate manner.

[DEFENSE COUNSEL]: Judge, I will follow up with Ms. Williams about her right to appeal.

THE COURT: Thank you.

¶ 10    Williams later filed a timely notice of appeal.

¶ 11                          ANALYSIS

¶ 12    Under recent changes to the law, criminal defendants are presumptively entitled to pretrial release under appropriate conditions. 725 ILCS 5/110-2(a) (West 2024); *id.* § 110-6.1(e). Broadly speaking, pretrial release can be denied only when the defendant's release would pose a serious danger to somebody else or when the defendant presents a significant flight risk. See *id.*

§ 110-6.1(a). In this case, the State filed a petition to detain Williams on the basis of dangerousness. See *id.* § 110-6.1(a)(1.5). To overcome the presumption in favor of her release, the State was required to prove three propositions by clear and convincing evidence: (1) that Williams committed a detainable offense, (2) that Williams "poses a real and present threat to the safety of any person or persons or the community," and (3) that no combination of release conditions could mitigate that threat. *Id.* § 110-6.1(e). On appeal, Williams argues that the State did not carry its burden on any of those elements.

¶ 13    Our standard of review is not settled. The vast majority of appellate cases review the trial court's findings at a detention hearing deferentially, reversing the denial of pretrial release only when the trial court has abused its discretion or entered a finding that was against the manifest weight of the evidence. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 21 (collecting cases). But it has also been argued that, with the exception of findings of historical fact, the trial court's findings should be reviewed *de novo*. See *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 79-138 (Ellis, J., concurring). In many appeals, the court's decision about which standard of review to apply is dispositive. This is not one of them. Whether reviewed deferentially or *de novo*, we hold that the trial court properly denied pretrial release.

¶ 14    Williams's primary contention on appeal is that the State did not prove by clear and convincing evidence that she set the fire that is the basis for the aggravated-arson charge. She posits that Tony, Allan's 64-year-old brother, is "a viable alternative suspect" because, according to Allan, "Tony 'spaces out' and has previously made threats about 'blowing up the world.' " We do not share that assessment. There were two people in the house, so the easy inference is that one of them was responsible. On one hand, we have Williams, who got into not one but two physical altercations inside the house, had to be forcibly removed from the premises, responded by taking a baseball bat to Allan's car, ran back in the house and locked Allen out, and, after the fire, sent a text message threatening to blow the car up. On the other hand, we have Tony, who lived in the house and presumably used the living room couch that was set ablaze but sometimes spaced out and, at some unspecified point, had talked about blowing up the world. We have no trouble saying

that the proffered facts clearly and convincingly showed that Williams, not Tony, was the one who set the fire.

¶ 15    Williams next argues that, even if the State made a clear and convincing showing that she was the one who set the fire, it still did not show that she posed a threat to anybody else. She points out that she lived more than seven miles away from Allan and Tony's home and that there is no indication that she went back to it between the fire on December 30 and her arrest on January 17. We fail to see why the distance matters when it obviously did not prevent her from going to the house on December 30. And whatever weight might be given to Williams not going back to the scene in the days following the incident is thoroughly negated by the fact that she threatened to blow up Allan's car. The proffered facts disclose that, whatever her motivation, Williams went to considerable effort to wreak havoc on Allan's car and home, including by setting a fire that put Tony's life at risk. Like the trial court, we think that the State clearly and convincingly showed that Williams poses a real and present threat to safety of Allan and Tony.

¶ 16    Finally, Williams argues that the State failed to prove that whatever threat she posed could not be mitigated by conditions of pretrial release such as home confinement or electronic monitoring. It is true, as Williams contends, that there was no evidence that she had previously been charged with escape or violating an order of protection, but she overlooks the fact that she was on pretrial release in a different case at the time of the charged incident. A standard condition of pretrial release is that the defendant will not commit any crimes. 725 ILCS 5/110-10(a)(4) (West 2024). That prohibition did not keep Williams from bashing in the windows of Allan's car or setting his furniture on fire, both of which are crimes. Her blatant disregard of her obligation not to break the law while on pretrial release hardly inspires confidence that she would follow any other conditions of release that could mitigate the real and present threat she poses to Allan and Tony. That concern is reinforced by her conduct during and after the detention hearing, which made evident the contempt in which she held the judge—and his rulings. Even highly restrictive conditions of release such as home confinement rely, to some extent, on the defendant's willingness to follow them. The circumstances shown by the record, including the proffered facts of the

charged offense, convinced the trial court that Williams was apt to act on impulse, without regard to constraints, and that no conditions of release would adequately guard against the threat her release would pose to Allan. We agree.

¶ 17    The trial court found that the facts proffered at the detention hearing clearly and convincingly showed that Williams had committed the detainable offense of aggravated arson, that she posed a real and present threat to Allan's and Tony's safety, and that there were no conditions of pretrial release that would mitigate that threat. Having reviewed the record, we agree with those findings, which were neither erroneous, against the manifest weight of the evidence, nor an abuse of discretion.

¶ 18                                    CONCLUSION

¶ 19    Because the State satisfied its burden at the detention hearing, we affirm the trial court's order denying Williams pretrial release.

¶ 20    Affirmed.